GEORGE S. DRAKE *et al.*, Trustees of GERARD B. ALLEN'S ESTATE, Appellants, v. MARY F. CRANE *et al.*, Defendants; EVERETT W. PATTISON, Respondent.

St. Louis Court of Appeals, May 12, 1896.

1. **Costs as Between Solicitor and Client in Actions in Equity.** Costs as between solicitor and client in an action in equity in relation to trust funds are allowable only in favor of trustees who, by virtue of their office, represent the trust fund.

2. ————: PAYMENT OF EXPENSES OF DISTRIBUTEE OUT OF HIS SHARE. Expenses of a litigating *cestui que trust,* which are not chargeable as costs, may be allowed in such an action out of his own share of a fund, if the fund is in court and admits of that disposition; but such allowance can not be made, when his estate or interest is purely contingent.

*Appeal from the St. Louis City Circuit Court.*—HON. P. R. FLITCRAFT, Judge.

REVERSED IN PART.

*Joseph G. Holliday* for appellants.

*Everett W. Pattison* for respondent.

ROMBAUER, P. J.—Gerard B. Allen by his last will appointed the plaintiffs trustees for his devisees and legatees. The trust was to continue until the death of all the life annuitants under the will, the death of all of the testator's children and the death of all such of his grandchildren as were living at the date of his death. Upon the termination of the trust by the aforesaid events, the estate was to be divided share and share alike, *per stirpes,* between the descendants

then living of the testator's three children. That this is the proper construction of the will is assumed by all parties. The trustees were empowered to sell, lease and manage, the testator's estate, except certain real estate reserved from sale. They were also authorized, if their judgment approved of it, to make advances to a limited amount to the male grandchildren of the testator when they arrived at the age of twenty-five years and gave satisfactory evidence of industry, general morality, business habits and ability, and to the female grandchildren when they married. The net income of the estate was divided into two funds. One designated as the surplus fund was to consist of seventy-five per cent of its aggregate, the other designated as a reserve fund of twenty-five per cent thereof. The advances above mentioned were to be made out of the reserve fund, which was set apart to guard against losses by shrinkage and other contingencies.

It will be thus seen that by the terms of the will the testator's grandchildren who were living at the date of his death took under it an estate contingent upon their descendants surviving the termination of the trust, which depended on the three events above mentioned; and the grandchildren of the testator not living at the date of his death, but born thereafter, took also a similar contingent estate. Neither set of grandchildren, however, took a vested estate in the reserve fund, nor did either of them take a contingent estate which could become vested prior to the termination of the trust. Neither of them had a right of present enjoyment, nor a present fixed right of future enjoyment, the right of future enjoyment being in both cases dependent on the event of their survival. 2 Washburn on Real Property [5 Ed.], 594.

The reserve fund being set apart for the purpose, among others, to meet contingencies, the trustees were

in doubt whether this would authorize them to use part of it toward a bonus subscription in order to secure the erection of an extensive hotel. They were satisfied that the erection of the hotel in the vicinity of the property reserved from sale would largely increase the rental value of such property, and hence were desirous to make the subscription. They presented a petition to the circuit court, asking its advice and direction in the matter as to whether they were authorized under the terms of the trust to make this subscription out of the reserve fund. The petition contained a further prayer that the court should authorize them to make the subscription if the will did not, a relief which we are free to say the court could not grant under any conceivable theory of the powers appertaining to a court of equity.

All the children and grandchildren of the decedent were made parties to this bill. A number of the grandchildren were minors, and Everett W. Pattison, the respondent, was appointed guardian *ad litem* for four of them, the other seven grandchildren being represented by another guardian *ad litem*. The adult defendants made no defense. The guardian *ad litem* for the seven minor defendants made a formal defense. Mr. Pattison as guardian *ad litem* for the four infants made a substantial defense both in the circuit court and in the supreme court, to which the case was taken by appeal, but was unsuccessful in both courts. Both courts were of the opinion that the trustees were authorized to make the subscription by the terms of the trust out of the reserve fund, and made decree accordingly. After final decree the respondent applied to the circuit court for an allowance for his services as guardian *ad litem*, and the court made him an allowance of $1,500, and ordered the trustees to pay said amount to him out of

the reserve fund in their hands. The trustees excepted to this ruling, and after an ineffectual motion for a new hearing have brought the case here by appeal.

Two errors are assigned by appellants: *First*, that while this is a proceeding in equity, yet the fund sought to be charged with the allowance is not in court, and hence can not be charged with the payment of this allowance; *next*, that conceding that the fund is in court, the parties represented by respondent have no such interest therein as warrants the court to subject it to the payment for services incurred in their behalf, their interest being purely contingent and dependent on events which may never happen.

The allowance which is sought to be recovered in this proceeding is not an allowance of taxable costs proper, but of costs which in chancery proceedings are known as costs between solicitor and client. On the first hearing of the case we were of opinion that there was no fund in court out of which such an allowance could be made. The litigation did not involve the general funds of the estate in any sense, and hence the general estate could not be considered a fund in court for any purpose, nor could the reserve fund be treated as a fund in court since it was not there for distribution, but merely for advice to the trustees touching its management which the trustees could either follow or disregard as they saw fit to do. A reexamination of the question, however, has satisfied us that this position is not wholly unassailable, and that respectable authorities can be found which go to the extent of holding that, under circumstances as show above, the reserve fund might be considered as a fund in court, and, as such, one out of which the court might award costs as between solicitor and client to all parties having a vested interest. 1 Redfield on Wills, 493–495; *Attorney General v. Moore's Ex'rs*, 19 N. J. Eq. 503.

The weight of authority in this country, however, seems to be otherwise. *Rose v. The Rose, etc., Ass'n*, 28 N. Y. 184; *Downing v. Marshall*, 37 N. Y. 380; *Savage v. Sherman*, 87 N. Y. 277. The better rule unquestionably is that costs between solicitor and client are allowable only in favor of the trustees, who by virtue of their office represent the trust fund, and that persons who intervene for their own interests, whether successful or not, are chargeable with the expenses of the litigation outside of strictly taxable costs. *Attorney General v. Insurance Company*, 91 N. Y. 57. If the fund is in court and admits of that disposition, such expenses may be allowed out of the share of the parties litigant, and the fact that the litigant is a minor does not change the rule. *Union Insurance Company v. Van Renselaer*, 4 Paige, 85; *Kerbaugh v. Vance*, 5 Lea, 114; *Halloway v. McIlhenny Co.*, 77 Texas, 657. But we are aware of no case where such an allowance has been made out of a fund in favor of a litigant who was not a representative of the fund, and whose interest therein was purely contingent. That an allowance out of the fund can be made in that event has been uniformly denied. *Gott v. Cook*, 7 Paige, 521; *Union Insurance Company v. Van Renselaer, supra; In re Holden*, 126 N. Y. 589.

The foregoing considerations necessarily lead to the conclusion, that the court erred, in any view of the case, by making an allowance to the respondent payable out of the reserve fund. As it is conceded that the allowance made in this case to the respondent is reasonable, there is no ground for setting aside so much of the order as relates to the mere amount of the allowance. So much of the order, however, as requires the trustees to pay it, or as requires the trustees to pay it out of any particular fund, must be vacated, and it is hereby reversed. We have pointed out in *Walton v. Yore*, 58

Mo. App. 562, the remedy which the guardian *ad litem* may have for the collection of his allowance in a similar case.. Costs of this appeal are to be divided between appellants and respondent. All the judges concur.