

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| IN THE ESTATE OF: ANNA LOIS TYNER | ) ) ) ) ) ) ) ) ) ) | No. ED111494<br><br>Appeal from the Circuit Court<br>of Shelby County<br><br><br>Honorable Frederick P. Tucker<br><br>FILED: January 9, 2024 |

This appeal arises from an action contesting the will of Anna Lois Tyner. The decedent's daughters, Theresa Schultz and Cecile Gregory, challenge the judgment awarding attorney fees from the decedent's estate to her son, Dennis Tyner. Because we conclude the trial court lacked authority to award attorney fees from the estate under the circumstances of this case, we reverse the judgment awarding such fees.

## Factual and Procedural Background

Dennis Tyner, Earl Tyner, Theresa Schultz, Cecile Gregory, and the late Charla Broughton were the only heirs to their mother's estate at the time she died testate. The will named Dennis[1] and Earl as co-personal representatives, and they presented the will for probate. The fifth paragraph of the will granted Dennis the right to purchase all of the decedent's real property at the

---

[1] Because some of the parties share a last name, we use their first names at times to avoid confusion. No familiarity or disrespect is intended.

price of $400 per acre, with the proceeds of the sale to be divided among her children in five equal shares. Dennis indicated his intent to exercise that right. The daughters filed a petition to contest the will, naming Dennis and Earl as defendants in their capacities as personal representatives of the estate. The petition claimed the fifth paragraph of the will was procured through Dennis's undue influence and sought to have that paragraph declared invalid. A jury rejected this claim, finding the contested portion of the will to be valid.

Dennis and Earl petitioned the trial court for reimbursement of the attorney fees they expended defending the will contest and asked that those fees be awarded from the estate prior to distribution of the assets therein. The daughters objected on the ground that each party must bear his or her own fees in a will contest. The trial court granted the request for fees, finding that "the underlying estate was directly [a]ffected by the suit in that it could not have been brought to a close without the resolution of the matter that was submitted to the jury." The daughters filed a motion to reconsider. After a hearing as to the amount of fees, the trial court denied that motion and ordered that Dennis "shall have [j]udgment against [the estate for] $46,855.70 and that the same shall be paid from [the estate] prior to any distribution of the net proceeds of the estate to the heirs." This appeal follows.

**Discussion**

In their sole point on appeal, the surviving daughters, Theresa and Cecile, contend the trial court erred in awarding attorney fees from the estate to a litigant in a will contest. "Whether a trial court had authority to award attorney fees is a question of law that we review *de novo*." *Yes Chancellor Farms, LLC v. Merkel*, 670 S.W.3d 214, 226 (Mo. App. E.D. 2023).

As a circuit court exercising jurisdiction in a probate matter, the trial court here had the same "general equitable powers" as any other court sitting in equity, pursuant to article V, section

2

27, of the Missouri Constitution. To the extent there is an applicable exception to the American Rule that litigants pay their own attorney fees, a court in a probate matter has the equitable power to award them. *See generally In re Estate of Murray*, 682 S.W.2d 857, 858 (Mo. App. W.D. 1984). And, under certain circumstances, a court may award attorney fees from an estate. *See id.* Theresa and Cecile acknowledge the trial court's general authority to award attorney fees from the estate under appropriate circumstances, but contend that no such circumstances existed in this case. We agree.

It has long been held that attorney fees are not recoverable from an estate in a will contest like this one. In 1897, the Supreme Court of Missouri recognized that while the technical purpose of a will contest is to determine the validity of the will, "the ultimate object—the real object—is to determine the rights of the parties to the property." *In re Soulard's Estate*, 43 S.W. 617, 624 (Mo. 1897). As such, the estate itself "is neither increased nor diminished by the result, and the [personal representative] is only interested in seeing that the formal proof of the due execution of the will is made." *Id.* Because "[t]he estate itself is not to be affected by the result" of a will contest between the parties, "they, and not the estate, should bear the expense of the litigation." *Id*.

In *Soulard's Estate*, after the decedent's will was probated, certain beneficiaries under the will contested its validity. *Id*. at 623. The personal representative[2] of the estate, who was also a beneficiary under the will, was named as defendant. *Id*. The case proceeded to trial, was ultimately dismissed, and the will was declared valid. *Id*. The trial court allowed the personal representative

---

[2] For ease of comparison among the cases cited herein, we have replaced "executor" with the synonymous, more modern term "personal representative," *see* section 472.010(26) RSMo (Cum. Supp. 2019), and "devisee" or "legatee" with the more generic "beneficiary."

3

to recover the attorney fees he expended defending the will contest. *Id.* On appeal, the Supreme Court framed the question as:

> whether the [personal representative] of a will, who is also a [beneficiary] under it, and whose interest depends entirely upon its validity, is entitled to reimbursement from the assets of the estate for sums paid to attorneys, for other expenses paid, in defending a statutory suit contesting the validity of the will, he being himself a party to the suit.

*Id.* The Supreme Court concluded that, because the personal representative was also a beneficiary under the will, he was "largely interested in its establishment" and, since the expenses incurred by him in the litigation were incurred on his own behalf, "none of it should be paid out of the estate." *Id.* at 625.

The facts in *Soulard's Estate* are virtually identical to the facts of this case. Here, the daughters—beneficiaries under the will—brought this action to contest the validity of the fifth paragraph of the will. But "the real object" of the suit was to determine Dennis's right to purchase the real property in the estate pursuant to that paragraph. *Id.* at 624. Because he was also a beneficiary, Dennis was not merely acting in his capacity as personal representative, interested only "in seeing that the formal proof of the due execution of the will [was] made." *Id.* Rather, Dennis was interested in the validity of the fifth paragraph of the will because he stood to personally benefit from it. Because the estate itself was "not to be affected by the result" of this will contest, the parties and not the estate should bear the expense of the litigation. *Id.*

Several other cases have expressly relied on *Soulard's Estate* for the proposition that attorney fees cannot be awarded from the estate in a will contest or analogous situations. *See In re Fry's Estate*, 70 S.W. 172, 173 (Mo. App. 1902) (finding that the personal representative and beneficiary under a will was not entitled to fees from the estate that were expended in successfully defending a will contest); *In re Ballard's Estate*, 247 S.W.2d 683, 685 (Mo. 1952) (finding that a

4

stranger to the estate was not entitled to fees he expended in a failed attempt to establish the existence of a will under which he would have been a beneficiary); *St. Louis Union Tr. Co. v. Conant,* 499 S.W.2d 761, 768-69 (Mo. 1973) (finding that a trustee was not entitled to fees from the trust estate incurred in litigation stemming from a will contest where the trustee was not administering the trust, but sought only to determine its own liability in a settlement of the will contest).

"[P]recedent does not lose its value simply because it is old." *Lee v. Peters*, 250 S.W.3d 783, 791 (Mo. App. W.D. 2008). The fact that the citations to *Soulard's Estate* are not numerous or more recent does not, as Dennis suggests, diminish its precedential authority. Rather, because no case of any vintage has called *Soulard's Estate* or its progeny into question—much less overruled it—and it is directly on point, we are bound to follow it. *See generally Melson v. Traxler*, 356 S.W.3d 264, 273 (Mo. App. E.D. 2011) ("Though this [Supreme Court] precedent is more than fifty years old, it has not been overruled or materially modified and is binding upon us."). Equally unavailing is Dennis's contention that article V, section 27, of the Missouri Constitution rendered inapplicable those cases that predate its effective date, January 2, 1979. That provision eliminated separate "probate courts" and, as noted above, gave circuit courts exercising jurisdiction over probate matters the same "general equitable powers" they possessed in other equitable matters. The holdings in *Soulard's Estate* and the cases citing to it were not, however, based on a probate court's lack of any such equitable powers because the attorney fees in those cases had been allowed or disallowed by a circuit court, not by a probate court. *See Soulard's Estate,* 43 S.W. at 623; *see also Fry's Estate*, 70 S.W. at 173; *Ballard's Estate*, 247 S.W.2d at 684; *Conant,* 499 S.W.2d at 762. Therefore, the subsequent constitutional grant of such powers had no effect on those courts' holdings.

5

Dennis also attempts to dissuade this Court from following *Soulard's Estate* by citing more recent cases that he claims demonstrate a "legal shift" on this issue. We disagree that those cases, which are not factually on point, provide authority for awarding fees to Dennis from the estate in this case. For example, in *Estate of Murray*, 682 S.W.2d at 858-59, a beneficiary under the will successfully petitioned to remove the estate's personal representative, who had neglected the estate for decades. The appellate court found that the trial court was authorized to award attorney fees in very unusual circumstances based on its equitable power to balance benefits, a recognized exception to the American Rule. *Id.* at 858. Because the beneficiary's action for an accounting from and removal of the personal representative was successful and "beneficial to the estate as a whole," she was allowed to recover her attorney fees from the estate. *Id.* at 858-59.[3] Likewise, in *In re Estate of Chrisman*, 723 S.W.2d 484, 485-86 (Mo. App. E.D. 1986), a beneficiary under a trust successfully removed the personal representative of the will that created the trust based on years of mismanagement of the estate. Applying the balancing of benefits test set out in *Estate of Murray*, the court concluded that the beneficiary was entitled to recover his attorney fees from the estate because his action was successful and had an "obvious" benefit on the estate. *Id.* at 487. In addition, the beneficiary was also a defendant in the personal representative's case to construe the will that created the trust. *Id.* The court noted that the "authority to allow payment of fees in will construction cases involving trusts is well entrenched in Missouri law." *Id.* Attorney fees may be paid out of the estate in such cases on the theory that "the litigation is indispensable to the proper

---

[3] In *Estate of Murray*, the court also mentioned another exception to the American Rule: "when [attorney fees] are incurred because of involvement in collateral litigation." 682 S.W.2d at 858. Under that exception, a party "may, in a separate cause of action for a defendant's breach of duty, recover as damages attorney[] fees expended in a different action brought by a third party when the collateral litigation was caused by the defendant's breach of duty." *City of Cottleville v. St. Charles Cnty.,* 91 S.W.3d 148, 150 (Mo. App. E.D. 2002). Dennis's assertion that this is "exactly" the situation here is obviously incorrect. The collateral litigation exception has no application here.

6

administration of the fund." *Id.*; *see also Lang v. Taussig*, 194 S.W.2d 743, 748-49 (Mo. App. 1946) (allowing a trust claimant to recover from the estate the attorney fees he incurred as a defendant in a case brought by the trustee to construe the instrument creating the trust); *Estate of Keen*, 488 S.W.3d 73, 93 (Mo. App. S.D. 2016) (allowing personal representative to recover from the estate the attorney fees she incurred on appeal involving dispute between conflicting trust claimants, because of the "very unusual circumstances complicating" administration of the estate).[4]

The cases cited above are clearly distinguishable on their facts. None of them involve an award of attorney fees from an estate to a beneficiary defending a will contest, as is the case here. *Soulard's Estate*, on the other hand, is on all fours with the facts of this case, and we are bound to reach the same result. And, to the extent the cases Dennis cites have any persuasive value, he has not demonstrated any benefit to the estate resulting from his defense of the will contest as was shown in *Estate of Murray* and *Estate of Chrisman*. Successfully removing derelict personal representatives in those cases obviously benefited the estates by ensuring they were no longer mismanaged, and litigating the meaning of the will creating a trust allowed for proper administration of the trust fund. *Estate of Chrisman*, 723 S.W.2d at 487; *Estate of Murray*, 682 S.W.2d at 858-59. There is no analogous benefit *to the estate* resulting from Dennis's success in

---

[4] The indispensable litigation theory discussed in *Estate of Chrisman* may have been what the trial court had in mind in this case when it found that the "estate was directly [a]ffected by the suit in that it could not have been brought to a close without the resolution of the matter that was submitted to the jury." *See* 723 S.W.2d at 487. But the fact that the estate could not be "brought to a close" until the validity of the will was determined was merely an incidental effect of the will contest case and not a basis on which to apply the indispensable litigation theory. *See Lang*, 194 S.W.2d at 748 (noting that the theory does not apply when the purpose of obtaining a construction of the instrument creating the trust was to enable the litigant to obtain something as an heir, "even if the litigation incidentally settled the status of the trust estate").

7

having the fifth paragraph of the will declared valid. *See Soulard's Estate*, 43 S.W. at 624. Only Dennis himself benefited from that result.

Dennis does not cite, nor have we found, any case allowing attorney fees in a will contest to be awarded from an estate to a litigant who stood to personally benefit from the determination of the will's validity.[5] The only cases addressing this particular scenario—*Soulard's Estate* and its progeny—hold that attorney fees may not be awarded from the estate and the litigants must bear their own expenses. Therefore, under the facts of this case, the trial court had no authority to award attorney fees from the estate to Dennis for his defense of the will contest. Point I is granted.

**Conclusion**

For the foregoing reasons, the judgment awarding attorney fees from the estate to Dennis Tyner is reversed.

_____
MICHAEL E. GARDNER, Judge

Kurt S. Odenwald, P.J., concurs.
Renée D. Hardin-Tammons, J., concurs.

---

[5] We note that *Anselmo v. Guasto*, 13 S.W.3d 650, 654 (Mo. App. E.D. 1999), allowed attorney fees from the estate to *trustees* who were obligated to defend a contest to the will creating the trust because, in doing so, they fulfilled their obligation to "preserve the trust and the trust assets." *Anselmo* is obviously distinguishable from the present case.